UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SILVERLAKE HOLDINGS, INC., on behalf of itself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ANDREW BROWN, RON MUNKITTRICK, DARRYL R. COHEN, MITCHELL COHEN and BDO SEIDMAN LLP, <br><br> Defendants. | ) ) ) ) ) Civil Action No. 1:05-CV-6521-DLC ) ) ) ) ) ) ) ) ) ) |
| ALFERD H. CAILTEAUX, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ANDREW BROWN, RON MUNKITTRICK, DARRYL R. COHEN, MITCHELL COHEN and BDO SEIDMAN LLP, <br><br> Defendants. | ) ) ) ) ) ) ) Civil Action No. 1:05-CV-6880-DLC ) ) ) ) ) ) ) ) ) |

[captions continue on following page]

**MEMORANDUM OF LAW IN SUPPORT OF THE RAMP INVESTOR GROUP'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF SELECTION OF LEAD COUNSEL**

| | |
|---|---|
| SOUTH FERRY, L.P. II,<br><br>    Plaintiff,<br><br>  v.<br><br>ANDREW BROWN, RON MUNKITTRICK, DARRYL R. COHEN, MITCHELL COHEN, ARTHUR GOLDBERG and BDO SEIDMAN LLP,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 1:05-CV-8050-UA<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF THE RAMP INVESTOR GROUP'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF SELECTION OF LEAD COUNSEL**

Movants Mark Lorenzo, Vincent Coluccio, Brian Steele and Eric Banks (collectively the "Ramp Investor Group") submit this memorandum of law in support of its motion for: (i) consolidation of the actions referenced in the instant captions (ii) appointment as Lead Plaintiff, pursuant to Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (iii) approval of Lead Plaintiff's selection of co-Lead Counsel.

**INTRODUCTION**

These securities fraud class actions were brought against Ramp Corporation ("Ramp" or the "Company") and certain officers and/or directors (collectively, "Defendants") of Ramp, alleging violations of Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder, on behalf of a class (the "Class") of purchasers of the publicly traded securities of Ramp between August 19, 2003, and May 20, 2005, inclusive (the "Class Period").

2

As set forth in the supporting documents, the Ramp Investor Group acquired no less than 645,850 shares of Ramp common stock during the Class Period and suffered losses[1] of no less than $304,201 as a result of Defendants' misconduct. The Ramp Investor Group herein seeks consolidation of the related actions, appointment as Lead Plaintiff, and approval of its selection of co-Lead Counsel for itself and the Class as set forth herein. As discussed below, the Ramp Investor Group has satisfied each of the requirements of the PSLRA and, therefore, is qualified for appointment as Lead Plaintiff in these Actions.

## PROCEDURAL BACKGROUND

On July 20, 2005, the plaintiff in Silverlake Holdings, Inc. v. Brown, et al., Civ. No. 05-6521, filed the first of these three related complaints. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), on July 20, 2005 plaintiff in the Silverlake Holdings, Inc action published notice of the pendency of the action over a widely-available, national business-oriented newswire service, *Market Wire,* advising members of the proposed class of their right to move the Court to serve as lead plaintiff(s) no later than September 19, 2005. See Hinton Decl., Ex. A. The Ramp Investor Group is filing this motion within the 60-day period following publication of the July 20, 2005, notice given by plaintiff therein.

## STATEMENT OF FACTS[2]

Each the related complaints filed alleges that the Defendants, BDO Seidman LLP ("Seidman") along with control person individual defendants, violated Sections 10(b) and 20(a) of

---

[1] The losses suffered by the Ramp Investor Group are not the same as their legally compensable damages, measurement of which is often a complex legal question which cannot be determined at this stage of the litigation. The approximate losses can, however, be determined from the certifications required under Section 21D and based on information concerning the current market for the Company's common stock. See Declaration of Christopher S. Hinton in Support of the Motion of the Ramp Investor Group for Appointment as Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel (the "Hinton Decl."), Ex. C.

[2] All facts are taken from the Silverlake Holdings, Inc. and Cailteaux complaints.

the Securities Exchange Act of 1934 by making materially false and misleading representations and omissions in public filings with the Securities and Exchange Commission.  Specifically, the complaints allege that Seidman, as Ramp's auditor, publicly issued materially misleading statements regarding the Company's well-being.

Ramp, was formerly known as Medix Resources, Inc. Ramp's principal activity is to develop and market healthcare connectivity software centered on its CarePoint Suite of application service providers ('ASP')-based internet technologies. Ramp provides Internet based communication, data integration, and transaction processing designed to provide access to safer and better healthcare. These proprietary technologies provide Internet-based communication, data integration and transaction processing technologies, electronic prescribing of drugs, laboratory orders and results. Ramp's products enable communication of healthcare information among physicians' offices, pharmacies, hospitals, pharmacy benefit managers, health management organizations, pharmaceutical companies and health insurance companies. On October 22, 2004, Ramp acquired Berdy Medical Systems, Inc.

Seidman is a large, multi-national accounting firm, and up until the end of the Class Period, acted as Ramp's auditor.  On May 21, 2005, Seidman resigned as the Company's auditor and advised Ramp that the Company's 2003 and 2004 audit reports were unreliable.  As a result of such information, Ramp stated that it would not file its quarterly report on Form 10-Q for the quarter ended March 31, 2005 on time, which led to its defaulting on $4 million the Company had received in January 2005 in a private placement from DKR, Harborview, and Platinum, and a $2.1 million private placement it received in March 2005 from Alpha, Ellis and Double U.  The Company was notified on May 31, 2005 by a letter from DKR that it was in default under the debentures and demanding the mandatory prepayment amount thereunder.  On May 27, 2005, the Company received a letter from Alpha notifying it that it was in default under the Note and demanding

immediate payment of the Note including principal and interest.  In addition, because of the Company's failure to file its first quarter 10-Q on time, it will be ineligible for at least one year to register its securities with the SEC under Form S-3, which could potentially result in the Company owing monthly liquidated damages under its securities purchase agreements.

Upon disclosure of the news that Seidman had resigned and that its financial statements for 2003 and 2004 were unreliable, the Company's stock did not trade for approximately two weeks. When it began trading again, it decreased in price to $0.10 per share.

## ARGUMENT

**I.    CONSOLIDATION IS APPROPRIATE**

Rule 42(a) of the Federal Rules of Civil Procedure provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions, it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a).  Rule 42 of the Federal Rules of Civil Procedure allows for the consolidation of actions involving a common question of law or fact.  The Ramp Investor Group asks this Court to consolidate the above-captioned related actions presently before the Court, as well as any other action now pending or hereafter filed in or transferred to this Judicial District as a class action on behalf of purchasers of the securities of Ramp which arise out of the same facts as alleged in the above-referenced actions.

The class actions currently before the Court are ideally suited for consolidation pursuant to Rule 42, since they present virtually identical claims for relief based upon a single course of conduct during the Class Period, as described above.  Thus, since the complaints present similar issues of law and fact, consolidation of these actions promotes judicial economy by streamlining and simplifying pre-trial and discovery motions and class certification issues, and by reducing the waste, confusion, and delay that could result from multiple trials.

5

Under Section 21D(a)(3)(B)(ii) of the Exchange Act, the Court must decide this motion to consolidate before determining the Lead Plaintiff.

## II. THE RAMP INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

### A. The Procedure Required By the PSLRA

The PSLRA has established a procedure that governs the appointment of a lead plaintiff in "each action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Plaintiff in the Silverlake Holdings, Inc action caused notice to be published via *Market Wire* on July 20, 2005. See Hinton Decl., Ex. A. Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 78u-4(a)(3)(A) and (B).

Second, the PSLRA provides that within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that --
>
> (aa)   has either filed the complaint or made a motion in response to a notice . . .
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and

    (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).  See generally Greebel v. FTP Software, 939 F. Supp. 57, 64 (D. Mass. 1996).

  **B.** **The Ramp Investor Group Satisfies the "Lead Plaintiff" Requirements of the PSLRA**

    **1.** **The Ramp Investor Group Has Complied With the PSLRA and Should Be Appointed Lead Plaintiff**

  The time period in which class members may move to be appointed lead plaintiff herein under 15 U.S.C. § 78u-4(a)(3)(A) and (B) expires on September 19, 2005.  Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice, the Ramp Investor Group herein timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the Class.

  Each member of the Ramp Investor Group has duly signed and filed a certification stating that they have reviewed the complaint filed in the action and are willing to serve as a representative party on behalf of the Class.  See Hinton Decl., Ex. B.  In addition, the Ramp Investor Group has selected and retained experienced and competent counsel to represent it and the Class.  See Hinton Decl., Ex. D.

  Accordingly, the Ramp Investor Group has satisfied the individual requirements of 15 U.S.C. § 78u-4(a)(3)(B) and is entitled to have its application for appointment as lead plaintiff and selection of counsel, as set forth herein, considered and approved by the Court.

    **2.** **The Ramp Investor Group Has the Largest Financial Interest in the Relief Sought By the Class**

  According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the court shall appoint as lead plaintiff the class member or members who represent the largest financial interest in the relief sought by the action.

During the Class Period, as evidenced by, among other things, the accompanying signed certification, and resulting loss chart, the Ramp Investor Group acquired no less than 645,850 shares shares of Ramp common stock during the Class Period and suffered losses of no less than $304,201 as a result of Defendants' misconduct. See Hinton Decl., Ex. C.  The Ramp Investor Group herein has a significant financial interest in this case.

The Ramp Investor Group has not received notice of any other applicant or applicant group that has sustained greater financial losses in connection with the purchase and/or sale of the Company's common stock.  Therefore, the Ramp Investor Group satisfies all of the PSLRA's prerequisites for appointment as Lead Plaintiff in this action and should be appointed as Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B).

### 3. The Ramp Investor Group Otherwise Satisfies Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative.  Consequently, in deciding a motion to serve as lead plaintiff, the Court shall limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification.  Lax v. First Merchants Acceptance Corp., 1997 U.S. Dist. LEXIS 11866, at *20 (N.D. Ill. Aug. 6, 1997); Fischler v. Amsouth Bancorporation, 1997 U.S. Dist. LEXIS 2875, at *7-

8

*8 (M.D. Fla. Feb. 6, 1997); Zaltzman v. Manugistics Group, Inc., 1998 U.S. Dist. LEXIS 22867, at *20 (D. Md. Oct. 8, 1998).

The Ramp Investor Group satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as lead plaintiff.  Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class.  Typicality exists if claims "arise from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  See In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992), cert. dismissed sub nom., 506 U.S. 1088 (1993); In re Cable & Wireless, PLC, Sec. Litig., 217 F.R.D. 372, 375 (E.D. Va. 2003); In re MicroStrategy Sec. Litig., 110 F. Supp. 2d 427, 435-36 (E.D. Va. 2000).  However, the claims of the class representative need not be identical to the claims of the class to satisfy typicality.  Instead, the courts have recognized that:

> [T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.

Bishop v. New York City Dep't of Hous. Pres. and Dev., 141 F.R.D. 229, 238 (S.D.N.Y. 1992); Avagliano v. Sumitomo Shoji America, Inc., 103 F.R.D. 562, 582 (S.D.N.Y. 1984).

The Ramp Investor Group seeks to represent a class of all purchasers of the publicly traded securities of Ramp during the Class Period who have identical, non-competing and non-conflicting interests.  The Ramp Investor Group satisfies the typicality requirement because each of its members:  (i) acquired Ramp securities on a the NASDAQ National Market; (ii) at market prices allegedly artificially inflated as a result of Defendants' violations of the federal securities laws; and (iii) suffered damages thereby.  Thus, typicality is satisfied since the claims asserted by the Ramp Investor Group "arise[] from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory."  Walsh v. Northup-Grumman Corp., 162 F.R.D. 440, 445 (E.D.N.Y. 1995).

Under Rule 23(a)(4) the representative party must also "fairly and adequately protect the interests of the class." The standard for adequacy of representation under Rule 23(a)(4) is met by : (1) the absence of potential conflict between the named plaintiff and the class members, and (2) the class representative's choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation. Garfinkel v. Memory Metals, Inc., 695 F. Supp. 1397, 1405 (D. Conn. 1988).

Here, the Ramp Investor Group is an adequate representative of the class. As evidenced by the injury suffered by the Ramp Investor Group, which purchased Ramp securities on the NASDAQ National Market allegedly artificially inflated by Defendants' violations of the federal securities laws, the interests of the Ramp Investor Group is clearly aligned with the members of the class, and there is no evidence of any antagonism between the Ramp Investor Group's interests and those of the other members of the class. In addition, as shown below, the Ramp Investor Group's proposed co-Lead Counsel is highly qualified, experienced, and able to conduct this complex litigation in a professional manner. Thus, the Ramp Investor Group prima facie satisfies the commonality, typicality and adequacy requirements of Rule 23.

Clearly, the Proposed Lead Plaintiff satisfies all prongs of the Exchange Act's prerequisites for appointment as Lead Plaintiff in this action pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii).

## III.   THE COURT SHOULD APPROVE THE RAMP INVESTOR GROUP'S CHOICE OF COUNSEL

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), proposed lead plaintiff shall, subject to court approval, select and retain counsel to represent the class they seek to represent. In that regard, the Ramp Investor Group has selected and retained Murray, Frank & Sailer LLP and Abraham Fruchter & Twersky LLP to serve as co-Lead Counsel for the Class. Murray, Frank & Sailer LLP and Abraham Fruchter & Twersky LLP have extensive experience in successfully prosecuting complex securities actions and have frequently appeared in major actions in this and other courts.  See

Hinton Decl., Ex. D.

Because there is nothing to suggest that the Ramp Investor Group or its counsel will not fairly and adequately represent the Class, or that the Ramp Investor Group is subject to unique defenses – which is the <u>only</u> evidence that can rebut the presumption of adequacy under the Act – this Court should appoint the Ramp Investor Group as Lead Plaintiff and approve its selection of Murray, Frank & Sailer LLP and Abraham Fruchter & Twersky LLP to serve as co-Lead Counsel for the Class.

## CONCLUSION

For the foregoing reasons, the Ramp Investor Group requests that the Court:  (i) consolidate the actions referenced in the instant captions (ii) appoint the Ramp Investor Group as Lead Plaintiff in the Actions; and (iii) approve Murray, Frank & Sailer LLP and Abraham Fruchter & Twersky LLP to serve as co-Lead Counsel for the Class.

Dated: September 19, 2005                     Respectfully submitted,

**MURRAY, FRANK & SAILER LLP**

By:   s/ Eric J. Belfi
       Eric J. Belfi (EB8895)
       Christopher S. Hinton (CH0759)
       Bradley P. Dyer (BD9620)
       275 Madison Avenue, 8th Floor
       New York, NY 10016
       Telephone:  (212) 682-1818
       Facsimile:   (212) 682-1892

**ABRAHAM FRUCHTER & TWERSKY LLP**
Jeffrey S. Abraham (JA2945)
Lawrence D. Levit (LL9507)
One Penn Plaza, Suite 2805
New York, NY 10119
Telephone: (212) 279-5050
Facsimile: (212) 279-3655

**Proposed co-Lead Counsel**

**LAW OFFICES OF BRUCE G. MURPHY**
Bruce G. Murphy
265 Llwyds Lane
Vero Beach, FL 32963
Telephone: (561) 231-4202

**Additional Counsel for Plaintiffs**