```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/10/07
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X
                                        :
IN RE RAMP CORPORATION                  :    05 Civ. 6521 (DLC)
SECURITIES LITIGATION,                  :
                                        :       CORRECTED
This document relates to all actions.   :    OPINION & ORDER[1]
                                        :
----------------------------------------X

Appearances:

Class Counsel:
Jacqueline Sailer
Murray, Frank & Sailer LLP
275 Madison Avenue, Suite 801
New York, New York 10016

For Defendant BDO Seidman, LLP:
Ira G. Greenberg
Edwards Angell Palmer & Dodge LLP
750 Lexington Avenue, 8th Floor
New York, New York 10022

DENISE COTE, District Judge:

    Through an Order of July 3, 2007, the settlement in this securities class action was approved.  This Opinion makes the findings under Federal Rule of Civil Procedure 11, as required by the Private Securities Litigation Reform Act ("PSLRA").  See 15 U.S.C. § 78u-4(c)(1).

---

[1] An Opinion issued earlier today commented in error that Lead Counsel had not filed or submitted certain documents relevant to the decision on the award of attorney's fees.  That Opinion is replaced by this Corrected Opinion.

BACKGROUND

Beginning on July 19, 2005, class action lawsuits were filed against executives of Ramp Corporation ("Ramp") and its auditor BDO Seidman LLP ("BDO").  The actions were consolidated, a consolidated amended complaint ("Complaint") was filed by Lead Counsel for the putative plaintiff class, and through an Opinion of July 21, 2006, the claims in the Complaint were largely dismissed.  All claims against BDO and three individuals were dismissed with prejudice.  Claims against Andrew Brown ("Brown") and one other individual defendant survived.  In re Ramp Corp. Sec. Litig., No. 05 Civ. 6521 (DLC), 2006 WL 2037913 (S.D.N.Y. July 21, 2006)("Motion to Dismiss Opinion").  The Motion to Dismiss Opinion is incorporated by reference, and familiarity with the Opinion is assumed.

Following review of documents obtained from Ramp through motion practice before the United States Bankruptcy Court and negotiation before Magistrate Judge Andrew J. Peck, the parties reached a settlement in principal on November 13, 2006.  The parties filed their Stipulation of Settlement and application for preliminary approval of the settlement on February 9, 2007.  After several revisions to the proposed notice to the class[2] and

---

[2] The class notice went through four revisions.  There were drafts of February 9 and 26, and March 16 and 22.  The final version was dated March 23.  The February 26th draft was the subject of a lengthy conference with counsel on March 1.

2

the terms of the settlement, preliminary approval was given on March 23.

A fairness hearing on the settlement was held on June 29, 2007 ("Fairness Hearing"). One class member attended the hearing to present his objections to the settlement. For the reasons stated at the hearing, and in an Opinion which followed the hearing, the objections were rejected and the settlement was approved. See In re Ramp Corp. Sec. Litig., No. 05 Civ. 6521 (DLC), 2007 WL 1964153 (S.D.N.Y. July 3, 2007).

BDO requested that sanctions be imposed on plaintiffs in a February 17, 2007 letter, and a briefing schedule to address the issues raised by that request was also set at the Fairness Hearing. Among other things, Lead Counsel for the class was directed to address specifically whether it had complied with Rule 11, and to submit further information to support their request for attorneys fees, including copies of the draft notices to the class, their computerized time records, and a revised calculation of their lodestar or presumptively reasonable fee[3] based solely on the claims that survived the Motion to Dismiss Opinion. Lead Counsel was advised to give particular attention to the March 1 conference at which the

---

[3] One Second Circuit panel recently expressed that it preferred the term "presumptively reasonable fee" to "lodestar." See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 117 n.4 and 118 (2d Cir. 2007).

3

February 26 draft of the class notice was discussed. At that conference the Court raised questions about the scope of the release described in the notice and the discussion of the plan of allocation contained in the notice.

On July 20, Lead Counsel made its presentation regarding compliance with Rule 11 and responded to the remaining directives issued at the Fairness Hearing. It removed any request for attorney's fees based on work done in connection with the revised notice to the class or the revised release negotiated with the defendants. In a brief of July 29, BDO argued that Lead Counsel had not complied with Rule 11. Lead Counsel replied on August 31.

DISCUSSION

The PSLRA requires a court to make findings regarding each attorney and party's compliance with Federal Rule of Civil Procedure 11 in actions arising under the PSLRA upon their "final adjudication." 15 U.S.C. § 78u-4(c). Rule 11 is governed by a reasonableness standard:

> A pleading, motion or other paper violates Rule 11 either when it has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

W.K. Webster & Co. v. Am. President Lines, Ltd., 32 F.3d 665, 670 (2d Cir. 1994) (citation omitted).

The issues arising under Rule 11 are presented in their starkest form through the claims pleaded in the Complaint against BDO.  The Complaint did not contain traditional allegations against an auditor.  For example, the Complaint did not even allege that any of the financial statements audited by BDO contained materially false statements.  Indeed, the BDO certifications of the audits it performed of Ramp financial statements for the years 2003 and 2004, each of which reported massive losses, carried "going concern" warnings.  The 2004 certification added a disclaimer to advise readers that BDO had not performed an audit of Ramp's internal controls over its financial reporting.

Moreover, as described in the Complaint, the public disclosures that were alleged to have triggered the losses on which the Complaint was premised did not concern facts known to BDO and concealed by it.  These loss-triggering disclosures were made in May and June 2005, and included that Brown had received a cash gift in December 2003, that he had just resigned as a Ramp officer, and that Ramp would not timely file its quarterly report, which triggered a default on over $6 million in private placements that Ramp had received.  Even the disclosures tied more directly to BDO did not relate to information it had

5

concealed from the public.  The public disclosures included BDO's conclusion that Brown's receipt of the gift and his delay in reporting it cast doubt on management's integrity, its resignation as Ramp's auditor, and its withdrawal of its audit reports for the years 2003 and 2004.  In connection with the latter, BDO explained that management's representations were an integral component of the audits.

In sum, the Complaint did not link any of these facts disclosed in May and June 2005 to facts known to and concealed by BDO.  In particular, there was no allegation that BDO either knew or should have known of the most significant of these events for purposes of the Complaint's theory of liability -- the gift to Brown -- at any point before the gift was disclosed in May 2005.  Nonetheless, the Complaint alleged that BDO was liable under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), for failing to conduct its audit in accordance with Generally Accepted Accounting Standards, or GAAS, principally based on the theory that BDO had turned a blind eye to indications that management lacked integrity and that Ramp's internal financial controls were unreliable.

The Motion to Dismiss Opinion rejected the Section 10(b) claim against BDO on the ground that the Complaint did not identify a material misrepresentation of Ramp's financial condition in the audited financial statements, and that without

6

such a false statement, the quality of the audit was immaterial. It also found that the Complaint had not pointed to any statement in BDO's audit certification that constituted a representation about the integrity of Ramp's management, noting that nothing in GAAS requires such a representation.  The Opinion held that the Complaint also failed to plead loss causation as to BDO.  Id. at *8-11.

In support of this Complaint, Lead Counsel argues that BDO's audit was understood by investors to represent a finding that Ramp's management was honest, but that there were red flags that put BDO on notice that management lacked integrity.  To support a finding that it complied with Rule 11, Lead Counsel has submitted arguments in support of its claims against BDO and this theory of liability that it did not present in opposition to the motion to dismiss.  Lead Counsel adds that before filing the Complaint it used a forensic accountant to opine on an auditor's responsibilities in conducting an audit of a public company whose management was ultimately determined to lack integrity.

Notably, Lead Counsel does not present evidence of the substance of the advice it received from that expert at any time before it filed its claims.  Instead, it has submitted a July 2007 declaration from the accountant in support of its application for attorney's fees that purports to find support in

7

several auditing standards for the unremarkable proposition that an auditor must consider management's integrity when performing an audit.  This declaration does not opine that GAAS requires or expects an auditor to conduct an audit of management's integrity when auditing a company's financial statements.  Nothing that Lead Counsel has submitted supports a finding that an audit opinion is a certification that management is honest.  Instead, a certification addresses the reliability of the financial statements, and whether they fairly present the financial position of the company in conformity with generally accepted accounting principles.

As for loss causation, Lead Counsel argues that the risk that was concealed from the public was that Ramp's management was dishonest, and that that risk materialized when Brown's bribe was disclosed and BDO resigned because, in its view, the cash gift to Brown and his delay in reporting it "cast doubt over [BDO's] ability to rely on management's integrity."  Lead Counsel contends that a colorable argument exists that BDO's resignation related to its identification of serous problems with management's integrity that caused it to declare Ramp's financial statements unreliable and to withdraw its audit reports.

The Complaint complies, albeit barely, with the forgiving standards of Rule 11.  The extent to which the quality of

counsel's efforts in this litigation deserves compensation will be addressed further in connection with the award of attorney's fees.

CONCLUSION

For the reasons stated herein, the Court does not find that any "party or attorney violated any requirement of Rule 11(b) of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(c)(2). Decision is reserved on the request for attorney's fees and expenses.

SO ORDERED:

Dated:   New York, New York
         October 10, 2007

_____
DENISE COTE
United States District Judge

9