UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE RAMP CORPORATION SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>All Actions | 05-CIV-6521 (DLC) |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
REVISED MOTION TO AUTHORIZE DISTRIBUTION OF NET
SETTLEMENT FUND, INCLUSION OF LATE CLAIMS, PAYMENT SETTLEMENT
ADMINISTRATION EXPENSES, AND DONATION OF UNCLAIMED FUNDS**

**TABLE OF CONTENTS**

BACKGROUND ................................................................................................................. 3

ARGUMENT ...................................................................................................................... 4

   A.   The Court Should Authorize Distribution Of The Net
       Settlement Fund To The Authorized Claimants ................................................... 4

      1.   The Court Should Authorize Distribution To
          Class Members Who Submitted Late Claims ................................................. 5

      2.   The Court Should Authorize The Pro Rata Distribution
          Of The Residual Amount To The Authorized Claimants ........................................... 6

   B.   The Court Should Approve Payment Of Settlement
       Administration Expenses Out Of The Settlement Fund ....................................... 8

   C.   The *Cy Pres* Donation Of Any Residual, Unclaimed Balance
       Of The Net Settlement Fund Is Appropriate........................................................ 9

CONCLUSION .................................................................................................................. 12

# TABLE OF AUTHORITIES

## Cases

*Hayes v. Arthur Young Co.*, Nos. 91-15331, 91-15546, and 91-15593,
   1994 WL 463493 (9th Cir. Aug. 26, 1994) .................................................................. 8

*In re "Agent Orange" Product Liability Litig.*, 821 F.2d 139 (2d Cir. 1987) ................................ 5

*In re Holocaust Victim Assets Litig.,* 424 F.3d 132 (2d. Cir. 2005) .............................................. 10

*In re Motorsports Merchandise Antitrust Litig.*, 160 F. Supp. 2d 1392 (N.D. Ga. 2001) ............ 10

*In re National Smelting of New Jersey, Inc. Bondholders' Litig.*,
   722 F. Supp. 152 (D.N.J. 1989) ................................................................................... 8

*In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315 (3d Cir. 2001) ............................ 5

*In re Paracelsus Corp. Sec. Litig.*, 2007 WL 433281 (S.D. Tex., Feb. 6, 2007) .......................... 10

*Jones v. National Distillers*, 56 F. Supp. 2d 355 (S.D.N.Y. 1999) ........................................... 9, 10

*Osofsky v. Zipf,* 645 F.2d 107 (2d Cir. 1981) ................................................................................. 7

*Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) ................... 9

*Zients v. LaMorte*, 459 F.2d 628 (2d Cir. 1972) ............................................................................ 5

## Statutes

Securities Exchange Act of 1934, Section 28(a) ............................................................................ 7

## Other Authorities

M.P. Adamski, Contribution and Settlement in Multiparty
   Actions under Rule 10b-5, 66 IOWA L. REV. 533, 566-567 (1981) ............................. 8

Lead Plaintiffs[1] and Settlement Class Representatives Brian Steele, Vincent Collucio, and Mark Lorenzo ("Plaintiffs") respectfully submit this revised memorandum of law in support of their motion to approve and authorize (1) the distribution of the Net Settlement Fund to those Settlement Class Members whose claims were deemed eligible to participate in the distribution by the court-appointed claims administrator Strategic Claims Services ("SCS" or "Claims Administrator"), so that each such claimant will receive 100% of their Recognized Loss plus a *pro rata* share of the balance remaining in the Net Settlement Fund; (2) payment of settlement administration expenses; and (3) the donation of any unclaimed balance of the Net Settlement Fund, in equal parts, to three not-for-profit entities: New York Law School, the Institute for Law and Economic Policy ("ILEP"), and the St. Vincent de Paul Legal Program Inc., Securities Arbitration Clinic, no earlier than twelve months from the date of the Court's order authorizing distribution of the Net Settlement Fund.[2]

Based on the Claims Administrator's analysis of the Proofs of Claim submitted in this Action, 665 claimants (including 19 that filed claims post-marked after the filing deadline had passed) have submitted valid and properly documented claims ("Authorized Claimants").[3] The total Recognized Loss for the Authorized Claimants is $1,488,157.39. As of March 11, 2008, the balance in the Net Settlement Fund, after the deduction of settlement administration expenses

---

[1] Capitalized terms used herein are defined in the Stipulation of Settlement, filed on February 9, 2007 (the "Stipulation"), unless otherwise noted.

[2] On March 11, 2008, Plaintiffs filed a motion for distribution, with supporting documents. On March 14, 2008, during a telephonic conference call, the Court requested Lead Counsel resubmit so that the motion expressly sought approval of a distribution to Authorized Claimants of 100% of their respective Recognized Loss plus a *pro rata* share of the excess funds available in the Net Settlement Fund.

[3] *See* Affidavit of Paul Mulholland, CPA, CVA, Concerning Administrative Procedures Performed to Process Claims and the Results Thereof, sworn to on March 10, 2008 (the "Mulholland Affidavit" or "Mulholland Aff."), previously submitted to this Court on March 11, 2008, ¶13(a). Mr. Mulholland is president of SCS.

2

requested herein, was $1,689,526.75.[4] The difference between these two figures is $201,369.36 (the "Residual Amount"). As the funds in the Net Settlement Fund exceed the total Recognized Loss, Authorized Claimants will each receive at a minimum 100% of their Recognized Loss. Lead Plaintiffs further seek to distribute the Residual Amount to the Authorized Claimants, on a *pro rata* basis, with any unclaimed funds thereafter to be distributed to the proposed not-for-profit entities.

For the reasons set forth in detail below, this proposed distribution is appropriate and should be approved.

## BACKGROUND

On July 3, 2007, this Court entered the Final Order and Judgment ("Final Order") approving the $2,075,000 cash settlement ("Settlement"). The Final Order was not appealed. By Order entered March 23, 2007 ("Preliminary Order") this Court preliminarily approved the Settlement, authorized the retention of a claims administrator, and approved the form of notice of the Settlement to the Class ("Notice"), among other things. The Notice directed the submission of Proofs of Claim to SCS postmarked no later than August 10, 2007, unless such date was otherwise extended by the Court.

As set forth in the Mulholland Affidavit, out of 22,808 Notice and Proof of Claim forms that were mailed out to potential Settlement Class Members, a total of 646 valid Proofs of Claim were timely submitted. Mulholland Aff., ¶ 13(a). An additional nineteen (19) otherwise proper Proofs of Claim reached the claims administrator, SCS, postmarked after the August 10, 2007

---

[4] *See* Declaration of Jacqueline Sailer in Support of Motion to Authorize Distribution of Net Settlement Fund, Inclusion of Late Claims, Payment of Fees and Expenses for Claims Administration, and Donation of Any Residual Balance, dated March 10, 2008 ("Sailer Declaration" or "Sailer Decl."), previously filed on March 11, 2008, at ¶ 5. The Settlement funds continue to accrue interest; therefore, this number will continue to increase incrementally until the Net Settlement Fund is fully distributed.

filing deadline. *Id*. The primary reason for the late filings was that these claimants did not receive Notice and Proof of Claim forms from their brokers in a timely manner. *Id.* Accordingly, Lead Counsel recommends that the Court grant leave to accept the 19 otherwise valid late claims.

SCS has completed the processing of the Proofs of Claim submitted in the Settlement, has calculated each Authorized Claimant's[5] Recognized Loss consistent with the Plan of Allocation, and each such claimant's share of the Net Settlement Fund. *See id*., ¶ 13(a) and Ex. D.[6] If the within motion is granted, SCS will issue checks to the Authorized Claimants in amounts representing 100% of their Recognized Loss plus their *pro rata* share of the Residual Amount.

## ARGUMENT

### A. The Court Should Authorize Distribution Of The Net Settlement Fund To The Authorized Claimants

SCS processed 1,379 Proofs of Claim submitted by potential Settlement Class Members; 665 of these claims were accepted, and 714 were rejected. Mulholland Aff., ¶¶ 8-9 and Exs. D-F. SCS notified 405 claimants whose Proof of Claim forms were deficient of the nature of the deficiency, and 235 claims were corrected. *Id*., ¶ 12. In sum, a total of 665 claims (including the 19 proper, but late claims) were determined to be eligible to receive a payment from the Net Settlement Fund. *Id.*, ¶ 13(a) and Ex. D.

Lead Counsel recommends rejecting 714 claims for several reasons. As Mr. Mulholland explains, 170 claimants failed to cure certain deficiencies, despite being given notice and an

---

[5] As used herein and in the Mulholland Affidavit, "Authorized Claimants" means the 646 claimants who submitted timely and valid claims plus those who submitted the 19 valid but untimely claims, for a total of 665 claimants.

[6] Exhibit D to the Mulholland Affidavit contains the names of the Authorized Claimants, and, in the right hand column, provides each Authorized Claimant's individual Recognized Loss.

4

opportunity to do so. Mulholland Aff., ¶ 13(b). 544 claims were rejected for various reasons, including that the claimants had suffered no loss, had not purchased during the class period, had submitted duplicate claims, had not purchased their shares, or had submitted a claim based on the purchase of a stock other than Ramp. *Id.*, ¶ 13(c). SCS sent rejection notices to these 714 claimants advising each of them that their claim was being rejected, and of the reason. *Id.* As of the date hereof, none of these claimants has objected to this determination. *Id.*, ¶ 11.

### 1. The Court Should Authorize Distribution To Class Members Who Submitted Late Claims

As discussed above, 19 claimants submitted late but otherwise proper claims. Mulholland Aff., ¶ 13(a). It is respectfully submitted that these late claims should be deemed timely and included in the eligible claim count.

Until the Net Settlement Funds are actually distributed, this Court retains broad equitable powers to include claims that were submitted late. In determining whether to allow late-filed claims, courts balance the goals of expedient settlement distribution and the consideration due to late-arriving class members. *See Zients v. LaMorte*, 459 F.2d 628, 630-31 (2d Cir. 1972); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 321 (3d Cir. 2001). Under circumstances similar to those presented here, the Second Circuit has found it appropriate for courts to exercise their equitable powers to permit the inclusion of late-filed claims. *See Zients*, 459 F.2d at 630-31 ("[W]here, as here, all the equities are on the side of the claimants, the fund has not been distributed and the administration of the fund would be insignificantly hampered by allowing these few late claims, appellants should be permitted to participate in the fund."); *see also In re "Agent Orange" Product Liability Litig.*, 821 F.2d 139, 145 (2d Cir. 1987). Here, too, the equities are on the side of the 19 late claimants and their claims should be included in the distribution.

5

Fairness supports inclusion of these late claims.  SCS has determined that nearly all of the late claimants received the Notice and Proof of Claim Form late from their brokers and were, therefore, not at fault.  Mulholland Aff., ¶ 13(a).  Thus, it would be inequitable to penalize them for their broker's delay.  Moreover, if the distribution as proposed is approved, everyone (including those who filed late) will receive more than their full Recognized Loss.  Plaintiffs submit that including these claimants is fair and reasonable whereas their exclusion would be inequitable.

The 19 claims represent a modest number when compared to the total number of timely and otherwise proper claims.  The Recognized Losses of all 665 Authorized Claimants (including the 19 claimants who filed late claims) total $1,488,157.39.  *Id.*, Exs. A and D.  The Recognized Losses of the 19 late claims total $80,809.27.  *Id*., ¶ 13(a), n.2 and Ex. D-1.  This represents only approximately 5% of the total Recognized Losses.  Moreover, according to Mr. Mulholland, inclusion of these 19 claims will not delay or impede the administration of the Settlement.  *Id.*

### 2. The Court Should Authorize The *Pro Rata* Distribution Of The Residual Amount To The Authorized Claimants

The amount available for distribution to the Authorized Claimants exceeds their total Recognized Losses by $201,369.36.  Consequently, the Authorized Claimants will receive, at a minimum, 100% of their Recognized Loss in the proposed distribution.  Plaintiffs further propose distributing the Residual Amount to the Authorized Claimants on a *pro rata* basis in proportion to their respective Recognized Loss.  This will result in each Authorized Claimant receiving approximately 13.5% in excess of Recognized Loss.

*Pro rata* distribution of the Residual Amount to Authorized Claimants is consistent with the terms of the Stipulation and the description of the Plan of Allocation in the Notice.

Paragraph 4(e) of the Stipulation provides that "[e]ach Settlement Class Member who submits a valid and timely Proof of Claim shall receive a distribution from the Net Settlement Fund based on the Plan of Allocation[.]" The Notice makes it abundantly clear, moreover, that the Recognized Loss formula

> is not intended to be an estimate of the amount of what a Settlement Class Member lost or might have been able to recover after a trial; nor is it an estimate of the amount that will be paid to Authorized Claimants pursuant to the Settlement. The Recognized Loss formula is the basis upon which the Net Settlement Fund will be proportionately allocated to the Authorized Claimants, and will be computed in accordance with the Plan of Allocation.

Notice, at 6.

A distribution similar to that proposed here was approved by a court in the District of Connecticut in *Fogel v. Information Mgm't Assocs. Inc.*, 3:00CV135 (D. Conn. July 25, 2003) (Thompson, J.). In connection with the distribution of the settlement proceeds obtained in that securities fraud class action, the claimants received approximately 125% of recognized loss. *See* Declaration of Gregory Linkh, dated March 28, 2008, and submitted herewith, Exhibit 1 (distribution motion and memorandum) and Exhibit 2 (order approving distribution).

The proposed *pro rata* distribution of the Residual Amount here is not precluded by Section 28(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78bb(a), which prohibits Plaintiffs and the Class from "recover[ing], through satisfaction of judgment in one or more actions, a total amount in excess of [their] actual damages on account of the act complained of." The purpose of Section 28(a) is to protect a defendant from punitive damages and double recoveries by plaintiffs. *Osofsky v. Zipf,* 645 F.2d 107, 111 (2d Cir. 1981). Neither of these concerns is implicated when the amount paid is the result of a voluntary settlement.

Furthermore, full recovery of Recognized Loss is not the equivalent of recovery of actual damages at trial. The posture of this case – a bargained-for settlement – is different from the

7

post-verdict posture, where judgment was entered assigning actual damages.[7] Here there was no final determination of actual damages; in fact, as provided in the Stipulation, Defendants' "position [is] that the Settlement Class has not sustained any damages." Stipulation, ¶ 4(g). Plaintiffs seek merely to allocate to Authorized Claimants amounts already paid by Defendants and available for distribution.

Accordingly, Plaintiffs respectfully request that the Court authorize the *pro rata* distribution of the 665 Authorized Claimants, providing each Authorized Claimant 100% of Recognized Loss plus a *pro rata* share of the Residual Amount, and approve SCS's rejection of the balance of claims submitted.

### B. The Court Should Approve Payment Of Settlement Administration Expenses Out Of The Settlement Fund

Plaintiffs also seek this Court's approval of additional settlement administration expenses. To date, SCS has provided notice and claims administration services in this Action for which it has billed the Settlement Class a total of $107,943.89. Pursuant to the terms of the Stipulation, SCS has been paid $66,583.14 out of the Notice and Administration Account.[8] Mulholland Aff., ¶ 14; *see* Sailer Decl., ¶ 12, n.4. SCS has submitted a detailed invoice for $41,360.75, representing the balance of what it is owed for its services. Mulholland Aff. ¶ 14 and Ex. G. While $33,416.86 remains in the Settlement Administration Account and will be

---

[7] *See Hayes v. Arthur Young Co.*, Nos. 91-15331, 91-15546, and 91-15593, 1994 WL 463493, at *17 (9th Cir. Aug. 26, 1994) (ruling that Section 28(a) barred the distribution of funds to class members in excess of jury determination of actual damages) (unreported decision). *But see In re National Smelting of New Jersey, Inc. Bondholders' Litig.*, 722 F. Supp. 152, 178 (D.N.J. 1989) (discussing Section 28(a), court noted that "it can be argued that the actual damage limitation is not offended so long as each wrongdoer is not required to pay more than his share of actual damages.") (*quoting* M.P. Adamski, Contribution and Settlement in Multiparty Actions under Rule 10b-5, 66 IOWA L. REV. 533, 566-567 (1981)).

[8] A copy of SCS's first invoice is attached as Exhibit E to the Affidavit of Paul Mulholland, CPA, CVA, Concerning Mailing of Notice Of Pendency of Proposed Class Action and Its Settlement, sworn to on June 20, 2007, that was previously filed herein.

8

applied to SCS's currently outstanding invoice, the terms of the Stipulation requires Court approval of the remaining unpaid portion of the invoice, or $7,943.89.

Accordingly, Plaintiffs request that the Court authorize payment to SCS from the Settlement Fund in the total amount of $7,943.89.

### C. The *Cy Pres* Donation Of Any Residual, Unclaimed Balance Of The Net Settlement Fund Is Appropriate

Following the Net Settlement Fund's distribution to Authorized Claimants, the Net Settlement Fund may contain a residual balance of unclaimed funds because of uncashed, undeliverable, or returned checks. Plaintiffs respectfully request that this Court approve the distribution of any such amounts remaining in the Net Settlement fund to three not-for-profit organizations described below no earlier than 12 months from the date of the order authorizing distribution.

"Most class actions result in some unclaimed funds." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990); *In re Motorsports Merchandise Antitrust Litig.*, 160 F. Supp. 2d 1392, 1393-94 (N.D. Ga. 2001) ("It is not uncommon in . . . class actions to have funds remaining after payment of all identifiable claims."). Indeed, "[d]espite best efforts[,] . . . it remains virtually certain—especially when large classes are involved—that not all class members will share in an aggregate class recovery. This situation may or may not result in a residue remaining after individual claim distribution." *Jones v. National Distillers*, 56 F. Supp. 2d 355, 356 (S.D.N.Y. 1999) (citations omitted). In such circumstances, "[f]ederal courts have broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds." *Six (6) Mexican Workers*, 904 F.2d at 1307 (finding that the court properly considered *cy pres* distribution for the limited purpose of distributing the unclaimed funds); *see Motorsports Merchandise*, 160 F. Supp. 2d at 1393 ("Where no legal

9

claim to settlement benefits exists, a court can exercise its equitable powers to distribute the remaining funds.").

"Where distribution of class funds to class members is infeasible, courts often use *cy pres* principles to determine an appropriate use for the funds." *Jones*, 56 F. Supp. 2d at 357.  Courts allow *cy pres* distribution of unclaimed funds to one or more recipients that are "appropriate under the circumstances." *Id.*; *see In re Holocaust Victim Assets Litig.*, 424 F.3d 132, 141 n.10 (2d. Cir. 2005) (unclaimed settlement funds may be distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members and those similarly situated).  As the court in *Jones* explains,

> [a] frequent use of class funds not accruing to the class members is a donation to a public or otherwise non-profit entity combating harms similar to those that injured the class members.  Such a donation may serve the cy pres principle of indirectly benefiting all class members.

56 F. Supp. 2d at 358.

Lead Counsel proposes the distribution of any unclaimed funds, in equal parts, to the following not-for-profit organizations: (1) New York Law School; (2) ILEP; and (3) the St. Vincent de Paul Legal Program Inc., Securities Arbitration Clinic.  *See* Sailer Decl., ¶ 13.  These organizations are involved in combating harms similar to those that injured the Settlement Class Members. *See, e.g.*, *In re Paracelsus Corp. Sec. Litig.*, 2007 WL 433281, at *2 (S.D. Tex., Feb. 6, 2007) (approving a *cy pres* distribution of unclaimed settlement funds to ILEP).  They foster *pro bono* representation of victims of securities fraud, as well as research and scholarly discussions among academics, the judiciary, securities regulators and practitioners regarding the use of the class action device, and the enforcement of securities and other anti-fraud laws and regulations.  A more detailed description of these entities is provided in paragraph 13, n.6 of the

Sailer Declaration.  These three entities are appropriate recipients of any unclaimed balance of the Net Settlement Fund.

Lead Counsel further requests permission to make the *cy pres* distribution of any unclaimed amounts remaining in the Net Settlement Fund no earlier than 12 months from the date of the order authorizing distribution.  It is efficient and economical to set a date for the distribution of unclaimed funds now in that it reduces future demand on the Court's, and the parties', time.  The twelve-month period is reasonable in that it permits ample time for Authorized Claimants to receive and cash their checks, and for Class Counsel and SCS to verify that the remaining checks are cashed and the recipients cannot be located.  Sailer Decl., ¶ 14.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court issue the proposed order authorizing the distribution of the Net Settlement Fund to the Authorized Claimants (including nineteen late-filed claims), in amounts equal to their respective Recognized Loss plus a *pro rata* share of the Residual Amount; directing payment of $7,943.89 out of the Settlement Fund to Strategic Claims Solutions, the court-appointed Claims Administrator; and authorizing the donation of any unclaimed balance of the Net Settlement Fund to New York Law School, ILEP, and the St. Vincent de Paul Legal Program Inc., Securities Arbitration Clinic, in equal parts, no earlier than twelve months from the date of entry of this Court's order authorizing distribution.

Dated: New York, New York
March 28, 2008

Respectfully submitted,

MURRAY, FRANK & SAILER LLP

    /s/
Jacqueline Sailer (JS-9020)
Gregory B. Linkh (GL-0477)
275 Madison Avenue, Suite 801
New York, New York 10016
Telephone: (212) 682-1818
Facsimile: (212) 682-1892

**Lead Counsel for Lead Plaintiffs
and the Settlement Class**

12

## DECLARATION OF SERVICE

I am an attorney admitted to practice in this district. I hereby certify, under penalty of perjury, that on this 28th day of March, 2008, I caused a true and correct copy of the foregoing document to be served on the persons listed below, 1) through this court's ECF system, 2) by e-mail, to:

Ruth Haber, Esq.
**Moses & Singer LLP**
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-1299
e-mail: rhaber@mosessinger.com

**Counsel for Andrew Brown**

Sarah Good, Esq.
Jason Takenouchi, Esq.
**Howard, Rice, Nemerovski,**
    **Canady, Falk & Rabkin P.C.**
7th Floor, Three Embarcadero Center
San Francisco, California 94111
e-mail: sgood@howardrice.com
e-mail: jtakenouchi@howardrice.com

**Counsel for Darryl Cohen**

Steven Popofsky, Esq.
**Gersten Savage LLP**
101 East 52nd Street
New York, New York 10022
e-mail: spopofsky@gskny.com

**Counsel for Darryl Cohen**


        /s/Gregory B. Linkh
           Gregory B. Linkh (GL-0477)